## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **JAMAH K. GROSVENOR**, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 06-619-GMS |
| | : | |
| **THOMAS C. CARROLL**, | : | |
| Warden, and **JOSEPH R. BIDEN, III**, | : | |
| Attorney General for the State of Delaware, | : | |
| | : | |
| Respondents.[1] | : | |

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

In December 2002, the petitioner, Jamah K. Grosvenor, pled guilty in Delaware Superior Court to two counts of first degree robbery and one count of possession of a firearm during the commission of a felony. *See Grosvenor v. State*, 2004 WL 2743543, *1 (Del. Nov. 22, 2004). The prosecution entered a *nolle prosequi* on seventeen additional charges in the indictment. *See* Del. Super. Ct. Crim. Dkt. in ID No. 0204003496 ("Crim. Dkt."). In March 2003, Grosvenor was sentenced to seven years of Level V incarceration to be followed by eight years of probation. *Grosvenor*, 2004 WL 2743543 at *1.

Grosvenor did not appeal his convictions or sentence. Instead, in April 2003, Grosvenor applied *pro se* for postconviction relief under Superior Court Criminal Rule 61, raising claims of ineffective assistance of counsel. After considering defense counsel's affidavit, the prosecutor's response, and Grosvenor's response to those filings, Superior Court denied the motion in March

---

[1] *See* Fed.R.Civ.P. 25(d)(1). Attorney General Joseph R. Biden, III, assumed office on January 2, 2007, replacing former Attorney General Carl C. Danberg, an original party to this case.

2004. *State v. Grosvenor*, 2004 WL 692720 (Del. Super. Ct. Mar. 30, 2004). On appeal, the

Delaware Supreme Court affirmed Superior Court's denial of his postconviction motion.

*Grosvenor*, 2004 WL 2743543 at *3. Grosvenor subsequently filed in Superior Court a petition

for a writ of habeas corpus and a motion to correct an illegal sentence under Criminal Rule 35,

both of which were denied. *See* Crim. Dkt. at Items 37, 38, 39 & 40. Grosvenor did not appeal

the denial of his habeas petition and he failed to prosecute the appeal from the denial of his Rule

35 motion resulting in the dismissal of that appeal. *See* Crim. Dkt. at Item 49. Finally, in

September 2005, Grosvenor moved a second time for relief under Criminal Rule 61. *See* Crim.

Dkt. at Item 45. Superior Court denied the motion on January 6, 2005. *See State v. Grosvenor*,

2006 WL 1520197 (Del. Super. Ct. Jan. 6, 2006). That decision was affirmed on appeal by the

Delaware Supreme Court on June 26, 2006. *See Grosvenor v. State*, 2006 WL 1765846 (Del.

June 26, 2006). Grosvenor's federal habeas petition is dated September 30, 2006. D.I. 1.

<u>Facts</u>

As recited by the state supreme court in *Poteat v. State*, 840 A.2d 599, 601-02 (Del.

2003),[2] the relevant facts leading to Grosvenor's arrest and conviction were as follows:

> Near midnight on April 5, 2002, four masked gunman entered the
> Peddler's Pit Stop liquor store in Newark. They were the appellant,
> Raheem Poteat, Robert Benson, Chris Gray and Jamah Grosvenor. In the
> store at the time were the proprietors Ravindra Patel and his wife Duana,
> their five-year old son, Mihir, and one customer, Larry Shuler.
>
> Upon entering the store, the four gunman-with their weapons drawn-split
> up. Two went behind the counter where Mrs. Patel was standing. One
> pointed a gun at her chest, the other at her head, telling her not to "do
> anything stupid." They then forced her to open the cash register and safe.
>
> The third and fourth gunmen went to the back of the store. One gunman

---

[2] Raheem Poteat and Robert Benson were two of Grosvenor's co-defendants in this case. They
went to trial and a Superior Court jury convicted them of all charges. *Poteat*, 840 A.2d at 601.
Both Grosvenor and Chris Gray testified for the prosecution at the trial.

confronted Mr. Patel, while the other gunman confronted Mr. Shuler. With a gun to his head, Mr. Patel was forced to lie on the floor while the robber went through his pockets. Mr. Shuler, too, was forced to lie on the floor, gun to his head, while he was robbed of some cash in his pockets.

The four men then fled from the store with the money they had stolen. A police officer was nearby, and the men were arrested just minutes after the robbery. All were charged with numerous crimes, including three counts of Robbery in the First Degree, three counts of Possession of a Firearm During the Commission of a Felony ("PFDCF") relating to the robbery charges, three counts of Aggravated Menacing, and three counts of PFDCF relating to the menacing charges.

<u>Discussion</u>

In his petition for federal habeas relief, Grosvenor raises nine grounds for relief: (1) Grosvenor was never arraigned; (2) defense counsel had a conflict of interest because of his friendship with the lead investigating officer as well as counsel's relationship with the co-defendants' attorneys; (3) defense counsel coerced co-defendant Chris Gray into accepting a plea offer, resulting in Gray testifying against his co-defendants; (4) the prosecutor coerced Chris Gray into changing his statement to implicate Grosvenor; (5) counsel was ineffective because he failed to prepare for trial; (6) counsel was ineffective because he failed to reveal that the scientific evidence was exculpatory before urging Grosvenor to accept the plea offer, resulting in an involuntary plea; (7) counsel was ineffective because he did not adequately consult with Grosvenor; (8) counsel was ineffective in failing to move for the merger of the aggravated menacing charges with the robbery charges; and (9) counsel was ineffective in failing to move to sever Grosvenor's trial from that of his co-defendants. D.I. 1. Grosvenor's claims, however, are unavailing.

**Failure to arraign**

Grosvenor complains that the Delaware courts failed to arraign him in violation of his federal constitutional rights. D.I. 1, supp. mem. at 1. Grosvenor presented this claim to the state supreme court in his appeal from the denial of his second postconviction motion. *See Grosvenor*, 2006 WL 1765846 at ¶ 4. Thus, Grosvenor has exhausted this claim. *See Smith v. Digmon*, 434 U.S. 332, 333-34 (1978); *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir. 1984).

After finding that a petitioner has exhausted state remedies, however, this Court "must then assure itself that a habeas petitioner has complied with relevant state procedural requirements before it can delve into the claim of constitutional error in a state conviction." *Bond v. Fulcomer*, 864 F.2d 306, 310 (3d Cir. 1989). Although Grosvenor presented his arraignment claim to the state supreme court, he did not comply with state procedural requirements. Grosvenor presented this claim in his second postconviction motion without having presented the issue in his first postconviction motion. *See Grosvenor*, 2006 WL 1765846. Under Superior Court Criminal Rule 61(i)(2), any ground for relief that was not asserted in a prior postconviction proceeding is thereafter barred unless consideration of the claim is warranted in the interest of justice, or a miscarriage of justice due to a constitutional violation. *See* DEL. SUPER. CT. CRIM. R. 61(i)(2), (5). The Delaware Supreme Court held that because Grosvenor had failed to raise this claim in his first postconviction motion, this claim was procedurally barred. *Grosvenor*, 2006 WL 1765846 at ¶ 4. Grosvenor, having failed to comply with Criminal Rule 61(i)(2), failed to comply with the relevant state procedural requirements. *See McLaughlin v. Carroll*, 270 F. Supp. 2d 490, 510 (D. Del. 2003); *Kirk v. Carroll*, 243 F. Supp. 2d 125, 143 (D. Del. 2003); *Lawrie v. Snyder*, 9 F. Supp.2d 428, 454 (D. Del. 1998);

*Carter v. Neal*, 910 F. Supp. 143, 149-50 (D. Del. 1995).   Although such claims may be reconsidered if warranted in the "interest of justice," the "interest of justice" exception requires the movant to show that the trial court lacked the authority to convict or punish him. *McLaughlin*, 270 F. Supp. 2d at 510 (citing *Maxion v. State,* 686 A.2d 148, 150 (Del.1996)). Grosvenor has not demonstrated that the Delaware Superior Court lacked the authority to convict him.   Moreover, this claim was known, or should have been known, at the time Grosvenor filed his first Rule 61 motion.   Consequently, the "interest of justice" exception does not apply, and the claim is procedurally barred.   Thus, federal habeas review of this claim is barred unless Grosvenor establishes cause for his procedural default in the state courts and actual prejudice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan*, 953 F.2d 853, 861-62 (3d Cir. 1992); *Dawson v. Snyder*, 988 F. Supp. 783, 804-05 (D. Del. 1997); *Johnson v. Ellingsworth*, 783 F. Supp. 215, 218-21 (D. Del. 1992).

       To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense" precluded his compliance with state procedural rules. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991); *Murray v. Carrier*, 477 U.S. 478, 487 (1986); *Dawson*, 988 F. Supp. at 805.   To establish prejudice under the cause and prejudice standard, a petitioner "must show 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"   *Carrier*, 477 U.S. at 493-94 (quoting *United States v. Frady*, 456 U.S. 152, 179 (1982)); *Dawson*, 988 F. Supp. at 804-05.   Grosvenor has failed to allege cause for his procedural default, and the claim can be dismissed on that basis alone.   *See White v. Carroll*, 416 F. Supp. 2d 270, 282 (D. Del. 2006).   Moreover, the miscarriage of justice does not apply because Grosvenor has not alleged any facts to establish his actual innocence.   *See Hubbard v.*

*Pinchak,* 378 F.3d 333, 339-40 (3d Cir. 2004) (holding that, in order to establish actual innocence sufficient to demonstrate a miscarriage of justice, a petitioner must assert "new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--- that was not presented at trial."). And finally, Grosvenor stated no constitutional violation. *See Garland v. Washington*, 323 U.S. 642, 645-47 (1914).

**Prosecutorial misconduct**

In his fourth claim for relief, Grosvenor asserts that co-defendant Chris Gray was coerced by the prosecutor, his own counsel and the chief investigating officer into changing his statement to implicate Grosvenor in the robbery. D.I. 1, supp. mem. at 23-26. Grosvenor presented this claim to the state courts in his second postconviction motion and on appeal from the denial of that motion (*See* Op. Br. at 25-28, *Grosvenor v. State*, Del. Supr. No. 61, 2006), thus exhausting his claim. *See Digmon*, 434 U.S. at 333-34; *Swanger*, 750 F.2d at 295. The state courts, however, interpreted this claim as an extension of Grosvenor's claim that Grosvenor's counsel coerced Gray into accepting a plea offer. *See Grosvenor*, 2006 WL 1520197 at *1 (interpreting Grosvenor's submission of Gray's affidavit as "newly discovered evidence to support previously adjudicated ineffective assistance of counsel claims"); *Grosvenor*, 2006 WL 1765846 at *1 (rejecting claim on same basis). Although the state courts failed to specifically address Grosvenor's claim of prosecutorial misconduct, that claim is nonetheless unavailing.

Grosvenor asserts, based entirely on a statement signed by Gray in 2005, that Gray was coerced by the prosecutor, his counsel and the chief investigating officer from the Newark Police Department into altering his statement to implicate Grosvenor as one of the robbers of the liquor store in 2002. *See* Statement of Chris Gray attached to Op. Br. in *Grosvenor v. State*, Del. Supr.

No. 61, 2006.  Further, Grosvenor insists that he would not have pled guilty if Gray had not been coerced into pleading guilty.  The Delaware Superior Court, considering Grosvenor's claim as a motion for a new trial based on newly discovered evidence, found that the affidavit was not legally sufficient to merit withdrawal of Grosvenor's plea.  *See Grosvenor*, 2006 WL 1520197 at *1.  The court found that Grosvenor had failed to "indicate[] when he discovered this evidence nor ha[d] he alleged that the affidavit could not have been produced before by the exercise of due diligence."  *Id*.  On appeal, the state supreme court found the affidavit to be "deficient in both and form and substance and the Superior Court was within its discretion to reject it as unreliable."  *Grosvenor*, 2006 WL 1765846 at *1.

Grosvenor has presented nothing more than a statement from Gray that he was coerced into making a false statement by the prosecutor because, by his own statement, the prosecutor threatened him with withdrawal of the plea offer and that Gray would have to serve twenty-four years of mandatory prison time if convicted at trial.  *See* Statement of Chris Gray attached to Op. Br. in *Grosvenor v. State*, Del. Supr. No. 61, 2006.  That information was accurate at the time it was provided.  Although the Delaware Supreme Court later held that the aggravated menacing charges merged into the robbery charges and Gray would only have had to serve fifteen years of mandatory prison time, the prosecutor based his statement to Gray on the penalties for the charges with which he was indicted.  *See Poteat v. State,* 840 A.2d 599, 606 (Del. 2003).  In any case, neither Grosvenor nor Gray has alleged any behavior on the part of the prosecutor or police that would rise to the level of prosecutorial misconduct.  Grosvenor was facing more than 200 years of possible incarceration if convicted on all charges.  *See* DEL. CODE ANN. TIT. 11, §§ 512, 832, 907, 1102, 1257 1447A, 1448, 4205, 4206.  Grosvenor, having testified under oath that he voluntarily entered into the plea agreement and, at the trial of his co-defendants, that he

committed the robbery is bound by those statements absent clear and convincing evidence to the contrary. *See Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977) ("the representations of the defendant . . . at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); *Lesko v. Lehman*, 925 F.2d 1527, 1537-38 (3d Cir. 1991). There is no evidence, beyond Gray's self-serving statement, to support the contention that Gray's decision to implicate Grosvenor in the robbery was the result of prosecutorial threats overbearing Gray's will. Consequently, this claim is without merit.

**Ineffective assistance of counsel**

Grosvenor's remaining claims (claims 2, 3 & 5-9) are all claims of ineffective assistance of trial counsel. All of Grosvenor's ineffective assistance of counsel claims were presented to the state supreme court and thus have been exhausted. *See Digmon*, 434 U.S. at 333-34; *Swanger*, 750 F.2d at 295. Grosvenor, however, is not entitled to relief on the basis of these claims.

Section 104 of Title I of the Antiterrorism and Effective Death Penalty Act of 1996, codified as 28 U.S.C. § 2254, restricts the scope of collateral review of convictions and sentences for persons in custody pursuant to the judgment of a state court. As amended, § 2254(d) states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceeding unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Hameen v. State of Delaware*, 212 F.3d 226, 235 (3d Cir. 2000); *Werts v. Vaughn*, 228 F.3d 178, 196-97 (3d Cir. 2000); *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 885 (3d Cir.) (*en banc*), *cert. denied*, 528 U.S. 824 (1999) (determining the standard of review governing petitions for a writ of habeas corpus under revised § 2254(d)). Thus, under revised § 2254, a habeas petitioner is not entitled to relief unless he can establish that the decision of the state court was contrary to, or involved an objectively unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See Gattis v. Snyder*, 278 F.3d 222, 228 (3d Cir. 2002); *Matteo*, 171 F.3d at 885; *Lawrie*, 9 F. Supp. 2d at 434. "A state court decision is contrary to Supreme Court precedent under § 2254(d)(1) where the state court reached a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jacobs v. Horn*, 395 F.3d 92, 100 (3d Cir. 2005) (citations and internal quotations omitted). A state court decision is an unreasonable application if the court identifies the correct governing legal rule based on Supreme Court precedent but unreasonably applies it to the facts of the particular case. *Id.* (citations omitted). Moreover, factual determinations by state trial and appellate courts are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding. *See* 28 U.S.C. §§ 2254(d)(2), (e)(1). *See also Williams,* 529 U.S. at 402-13; *Affinito v. Hendricks*, 366 F.3d 252, 256-57 (3d Cir. 2004); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

The clearly established federal law which governs ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). In *Strickland*, the United States Supreme Court articulated a two-part test for evaluating an ineffective assistance of counsel claim. First, a petitioner must demonstrate that counsel's performance at trial or on appeal fell below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In evaluating whether counsel performed reasonably, a court "must be highly deferential." *Id*. at 689. Therefore, a petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (quotation omitted). Second, a petitioner must illustrate that counsel's ineffective performance caused prejudice. *See Strickland*, 466 U.S. at 687. In order to demonstrate prejudice in the case of a guilty plea, the petitioner must show that but for counsel's unprofessional errors, there is a reasonable probability that he would not have pled guilty, but would have insisted on proceeding to trial. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In this case, the Delaware state courts correctly identified the two-prong *Strickland/Lockhart* standard applicable to Grosvenor's ineffectiveness claims. *See Grosvenor*, 2004 WL 692720 at *2; *Grosvenor*, 2004 WL 2743543 at *1, n.1; *Grosvenor*, 2006 WL 1520197 at *2; *Grosvenor*, 2006 WL 1765846 at *1. Thus the state supreme court's denial of the claims was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406; *Jacobs*, 395 F.3d at 100.

Moreover, the state courts reasonably applied the rule to the specific facts of Grosvenor's case. *See* 28 U.S.C. § 2254(d)(1). Grosvenor's claims of ineffective assistance of counsel fall into two general categories: failure to prepare for trial and failure to serve his client's best interest regarding the acceptance of a plea offer. Grosvenor complains, as he did in state court,

that his counsel should have prepared better for trial by moving to sever Grosvenor's trial from that of his co-defendants. Because, however, the evidence against all four of the co-defendants was substantially similar, there is no reason to believe that a motion to sever was likely to succeed. *See Robertson v. State*, 630 A.2d 1084, 1093-94 (Del. 1993). Moreover, Gray was presumably ready to testify at any trial, making his statement admissible in either a joint or separate trial. *See Nelson v. O'Neil*, 402 U.S. 622 (1971). Thus, trial counsel could not have been ineffective in filing an unwarranted severance motion. Further, Grosvenor has not articulated why he would not have pled guilty if his attorney had moved to sever the defendants. Because the state courts correctly found that Grosvenor failed to establish either prong of the *Strickland/Hill* test, this claim should be dismissed.

Similarly, Grosvenor's complaint that his counsel should have moved to dismiss the aggravated menacing charges is also unavailing. Although such a motion might have been successful in reducing the mandatory minimum sentence from 24 to 15 years,[3] Grosvenor still received the substantial benefit of only a seven-year sentence. *See Grosvenor*, 2006 WL 1765846 at *1. The state courts found "no reasonable probability that an earlier dismissal of the [aggravated menacing] charges would have changed Grosvenor's decision to plead guilty in light of the maximum possible sentence that Grosvenor could have received on the remaining charges." *Grosvenor*, 2004 WL 2743543 at *1. Thus, the state courts properly applying the *Hill* standard found that Grosvenor had not suffered prejudice. This claim should be dismissed.

In another complaint regarding his attorney's trial preparation, Grosvenor contends that his counsel failed to consult with him and counsel failed to inform him that the prosecution did not have forensic evidence implicating him to the robbery. The state supreme court found that

---

[3] *See Poteat v. State,* 840 A.2d 599, 606 (Del. 2003) (holding that aggravated menacing merged with first degree robbery , based on display of what appeared to be a deadly weapon).

even assuming Grosvenor's allegations to be true, the case against Grosvenor and his co-defendants was substantial without forensic evidence. *Grosvenor*, 2004 WL 2743543 at *2. The court noted that the four were arrested within minutes of the robbery, fleeing from police, and Gray's testimony implicated Grosvenor in the robbery. *Id.* Moreover, Grosvenor stated at his plea colloquy that he was entering the plea because he was guilty. *Id.* Grosvenor asserts that the lack of forensic evidence could have proved total innocence or been useful for impeachment purposes. D.I. 1, supp. mem. at 31. The record, however, does not support his assertion. A simple lack of definitive test results was not exculpatory, as there were no results implicating anyone else or eliminating Grosvenor as a suspect. Finding that Grosvenor had not been prejudiced by any lack of information regarding forensic evidence, or lack thereof, was a reasonable application of the *Strickland/Hill* paradigm. To the extent that Grosvenor separately alleges that his counsel failed to consult with him, that claim is conclusory and Grosvenor has failed to articulate how additional consultation would have altered his decision to plead guilty.

Finally, Grosvenor complains that his counsel had a conflict of interest and coerced Grosvenor into pleading guilty. Grosvenor contends that his attorney conspired with his co-defendants' attorneys to coerce the defendants to accept the State's plea offer. As a result of this coercion, Gray accepted the plea offer and subsequently gave a statement implicating Grosvenor in the robbery. In turn, Gray's decision to accept the plea offer and to implicate Grosvenor coerced Grosvenor to plead guilty as well. Grosvenor's counsel explained that he organized a joint meeting with the four co-defendants and their lawyers to discuss the evidence against them and to encourage them all to accept what counsel believed to be generous plea offers in light of the evidence against them. *See Grosvenor v. State*, Del. Supr., No. 141, 2004, State's Appendix at B4. The trial court found that no conflict of interest was created by virtue of having a joint

meeting to stifle any fears that the four co-defendants may have harbored that accepting a plea deal would label any one of them a snitch. *See Grosvenor*, 2004 WL 692720 at *3; *Grosvenor*, 2004 WL 2743543 at *2. The court also found that Gray's decision to plead guilty was on the advice of his own attorney, not Grosvenor's attorney. *Id.* Grosvenor contends that any attempt to encourage the other three co-defendants to plead guilty was against his own interests. D.I. 1, supp. mem. at 13-14. Grosvenor's attorney, however, explained that he was not seeking to have any one co-defendant plead guilty, but rather to point out the benefits of all of them accepting the plea offer. *See Grosvenor v. State*, Del. Supr., No. 141, 2004, State's Appendix at B4. There is no indication that Grosvenor's counsel coerced Gray to plead guilty. *See Grosvenor*, 2004 WL 692720 at *3 (Grosvenor's counsel "had nothing to do with Gray's plea and could not have coerced Gray into taking such a plea."). Even accepting Gray's "affidavit" as true, Gray only states that Grosvenor's lawyer, along with the other three lawyers present, indicated at the joint meeting that the co-defendants would not be successful at trial and that Gray was frightened by the lawyers' predictions. *See* Statement of Chris Gray attached to Op. Br. in *Grosvenor v. State*, Del. Supr. No. 61, 2006. Those predictions, as it turns out, were borne out by the conviction on all counts at trial of two of the co-defendants. The lawyers' discussion of the probability that the four co-defendants would be convicted at trial does not rise to the level of coercion. Grosvenor failed to demonstrate that his counsel acted against his interest. Grosvenor's counsel, even by the terms of Gray's own statement, was not the primary impetus for Gray's decision to plead guilty. *See* Statement of Chris Gray attached to Op. Br. in *Grosvenor v. State*, Del. Supr. No. 61, 2006. There is no reason to believe that Gray would not have pled guilty regardless of the joint meeting. Thus, the state courts' determination that Grosvenor failed to establish that his

counsel's performance was professionally unreasonable was a reasonable application of the *Strickland* standard.

Conclusion

Based upon the Superior Court docket sheet, it appears that no transcripts of Grosvenor's criminal proceedings in this case have been prepared. In the normal course of business, Grosvenor's plea colloquy (Dec. 11, 2002) and sentencing (Mar. 21, 2003) would have been recorded, but the transcript does not appear to have been prepared. In the event that the Court directs the production of any transcript, respondents cannot state with specificity when such transcript would be available. However, respondents reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court. Defense counsel's affidavit pursuant to Superior Court Criminal Rule 61(g)(2) appears in the Appendix to State's Answering Brief in *Grosvenor v. State*, Del. Supr., No. 141, 2004, at B4-7.

For the foregoing reasons, the petition for a writ of habeas corpus should be dismissed without further proceedings.

/s/ Elizabeth R. McFarlan
Deputy Attorney General
Del. Bar. ID No. 3759
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
elizabeth.mcfarlan@state.de.us

Date: February 16, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2007, I electronically filed an answer to a habeas petition with the Clerk of Court using CM/ECF. I also hereby certify that on February 16, 2007, I have mailed by United States Postal Service, the same documents to the following non-registered participant:

> Jamah K. Grosvenor
> SBI No. 367677
> Delaware Correctional Center
> 1181 Paddock Road
> Smyrna, DE 19977

> /s/ Elizabeth R. McFarlan
> Deputy Attorney General
> Department of Justice
> 820 N. French Street
> Wilmington, DE 19801
> (302) 577-8500
> Del. Bar. ID No. 3759
> elizabeth.mcfarlan@state.de.us