# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMAH K. GROSVENOR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 06-619-GMS |
| | ) | |
| MICHAEL DELOY, Warden, and | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents.[1] | ) | |

---

Jamah K. Grosvenor. *Pro se* petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of
Justice, Wilmington, Delaware. Attorney for respondents.

---

## MEMORANDUM OPINION

_____, 2010
Wilmington, Delaware

---

[1] When petitioner Jamah K. Grosvenor filed the instant petition, he was incarcerated at the
James T. Vaughn Correctional Center in Wilmington, Delaware, and Thomas Carroll was the
warden. However, petitioner is presently housed at the Sussex Correctional Center ("SCI") in
Smyrna, Delaware, and the warden is Michael Deloy. Consequently, Michael Deloy is named as
a party. *See* Fed. R. Civ. P. 25(d)(1).

Sleet, Chief District Judge

## I. INTRODUCTION

Petitioner Jamah K. Grosvenor ("Grosvenor") is an inmate at the Sussex Correctional

Center in Smyrna, Delaware.  Grosvenor filed the pending petition for a writ of habeas corpus

("petition") pursuant to 28 U.S.C. § 2254.  (D.I. 1.)  The State filed an answer in opposition.

(D.I. 12.)  For the reasons that follow, the court will dismiss Grosvenor's petition in its entirety

without an evidentiary hearing.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As recounted by the Delaware Supreme Court in *Poteat v. State*, 840 A.2d 599, 601-02

(Del. 2003),[2] the relevant facts leading to Grosvenor's arrest and conviction were as follows:

> Near midnight on April 5, 2002, four masked gunmen entered the Peddler's Pit Stop
> liquor store in Newark.  They were [] Raheem Poteat, Robert Benson, Chris Gray, and
> Jamah Grosvenor.  In the store at the time were the proprietors Ravinda Patel and his wife
> Duana, their five year old son, Mihir, and one customer, Larry Shuler.
>
> Upon entering the store, the four gunmen - with their weapons drawn- split up.  Two went
> behind the counter where Mrs. Patel was standing.  One pointed a gun at her chest, the
> other at her head, telling her not to "do anything stupid."  They then forced her to open
> the cash register and safe.
>
> The third and fourth gunmen went to the back of the store.  One gunman confronted Mr.
> Patel, while the other gunman confronted Mr. Shuler.  With a gun to his head, Mr. Patel
> was forced to lie on the floor while the robber went through his pockets.  Mr. Shuler, too,
> was forced to lie on the floor, gun to his head, while he was robbed of some cash in his

---

[2]Raheem Poteat and Robert Benson were two of Grosvenor's co-defendants in this case.
They went to trial and both Grosvenor and Chris Gray testified for the prosecution at the trial.  A
Superior Court jury convicted Poteat and Benson of all charges, and the Superior Court
sentenced them to the mandatory minimum twenty-four years of imprisonment.  *Poteat*, 840
A.2d at 601; *State v. Grosvenor*, 2004 WL 692720, at *2 (Del. Super. Ct. Mar. 30, 2004).
During Poteat's direct appeal, the Delaware Supreme Court held that the aggravated menacing
charges merged into the robbery charges, vacated the aggravated menacing conviction, and
remanded for re-sentencing.

pockets.

The four men then fled from the store with the money they had stolen. A police officer was nearby, and the men were arrested just minutes after the robbery. All were charged with numerous crimes, including three counts of Possession of a Firearm During the Commission of a Felony ("PFDCF") relating to the robbery charges, three counts of Aggravated Menacing, and three counts of PFDCF relating to the menacing charges.

In December 2002, Grosvenor pled guilty in the Delaware Superior Court to two counts of first degree robbery and one count of possession of a firearm during the commission of a felony; the State *nolle prossed* the other seventeen charges in the indictment. The Superior Court sentenced him to seven years at Level V incarceration followed by eight years of decreasing levels of supervision. Grosvenor did not appeal his conviction or sentence. *See Grosvenor v. State*, 871 A.2d 1127 (Table), 2004 WL 2743543 (Del. Nov. 22, 2004).

In April 2003, acting *pro se,* Grosvenor filed in the Delaware Superior Court a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), alleging ineffective assistance of counsel. *State v. Grosvenor,* 2004 WL 692720 (Del. Super. Ct. Mar. 30, 2004). The Superior Court denied the Rule 61 motion as meritless after considering defense counsel's Rule 61affidavit, the prosecutor's response, and Grosvenor's response to those filings. *Id.* The Delaware Supreme Court affirmed the Superior Court's judgment on post-conviction appeal. *Grosvenor*, 2004 WL 2743543.

Thereafter, Grosvenor filed in the Superior Court a petition for a writ of habeas corpus and a Rule 35 motion to correct an illegal sentence, both of which were denied. (D.I. 17, Del. Super. Ct. Crim. Dkt. Item Nos. 37-40.) Grosvenor appealed the denial of his Rule 35 motion, but the appeal was dismissed for failure to prosecute. *Id.* at Dkt. Item No. 49. He did not appeal the denial of his habeas petition. Finally, in September 2005, Grosvenor filed a second Rule 61

2

motion, which the Superior Court denied on January 6, 2005. *See State v. Grosvenor*, 2006 WL 1520197 (Del. Super. Ct. Jan. 6, 2006). The Delaware Supreme Court affirmed that decision on June 25, 2006. *See Grosvenor v. State*, 903 A.2d 322 (Table), 2006 WL 1765846 (Del. June 26, 2006).

Grosvenor timely filed the instant § 2254 petition, and the State filed an answer requesting the court to deny the petition in its entirety. (D.I. 12.) Grosvenor filed a reply. (D.I. 29.) The petition is ready for review.

## III. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see Woodford*, 538 U.S. at 206.

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b);

3

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>   (ii) circumstances exist that render such process ineffective to protect the rights of the
>     applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to

give "state courts one full opportunity to resolve any constitutional issues by invoking one

complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at

844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the

exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the

state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v.*

*Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997)(citations omitted); *Coverdale v. Snyder*, 2000 WL

1897290, at *2 (D. Del. Dec. 22, 2000). "Fair presentation of a claim means that the petitioner

must present a federal claim's factual and legal substance to the state courts in a manner that puts

them on notice that a federal claim is being asserted." *Holloway v. Horn*, 355 F.3d 707, 714 (3d

Cir. 2004)(internal citations omitted).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules

preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d

Cir. 2000); *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane,* 489 U.S.

288, 297-98 (1989). Nevertheless, such unexhausted claims are procedurally defaulted. *Lines,* 208 F.3d at 160. Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United States*, 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

**C. Standard of Review Under AEDPA**

If a federal court determines that a claim is not procedurally defaulted and the state court

5

adjudicated the federal claim on the merits, the court can only grant habeas relief if the state

court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of,
> clearly established Federal law, as determined by the Supreme Court of the United States;
> or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in
> light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250

F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of

28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its

substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115

(3d Cir. 2009).

When reviewing a § 2254 petition, a federal court must presume the state court's

determinations of factual issues are correct, unless the petitioner presents clear and convincing

evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341

(2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues,

whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This

presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v.

Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## IV. DISCUSSION

Grosvenor asserts the following claims for relief: (1) he was never arraigned; (2) the

prosecutor coerced Chris Gray into changing his statement to implicate Grosvenor; and (3)

defense counsel provided ineffective assistance by operating under a conflict of interest; by

coercing co-defendant Chris Gray into accepting a plea offer, which resulted in Gray testifying

6

against his co-defendants; by failing to consult with Grosvenor before he entered the plea and inform him that the scientific evidence was exculpatory, thereby rendering Grosvenor's plea involuntary; by failing to move for the merger of the aggravated menacing charges with the robbery charges; and by failing to move to sever Grosvenor's trial from his co-defendants' trials.[3]

## A. Claim one: failure to arraign

In claim one, Grosvenor alleges that the State's failure to arraign him violated his constitutional rights. Grosvenor exhausted state remedies for this claim by presenting it to the Delaware Supreme Court when he appealed his second Rule 61 motion. *See Grosvenor*, 2006 WL 1765846. The Delaware Supreme Court, however, held that the claim was procedurally barred under Delaware Superior Court Rule 61(i)(2) because Grosvenor failed to raise the issue in his first Rule 61 motion.[4] *Id.* at *1.

By applying the procedural bar of Rule 61(i)(2), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984) that its decision rested on state law grounds. Superior Court Criminal Rule 61 constitutes an independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v. Carroll*, 416 F. Supp. 2d

---

[3]Grosvenor's § 2254 petition alleges another ineffective assistance of counsel claim titled "failure to prepare for trial." This claim, however, mirrors his allegations that counsel did not reveal exculpatory scientific evidence, consult with him, file motions to have charges dismissed or merged, file a motion to sever defendants, or secure Grosvenor's right to an arraignment. The court will address the independent arguments separately, rather than in a discussion about a repetitive "failure to prepare for trial" claim.

[4]The Delaware Supreme Court alternatively denied the claim as waived, given its prior determination on direct appeal that Grosvenor voluntarily pled guilty. *Grosvenor*, 2006 WL 1765846, at *1. This alternate holding on the merits, however, does not prevent the court from relying on the Delaware Supreme Court's explicit holding that Grosvenor procedurally defaulted the claim under Rule 61(i)(2). *See Johnson v. Pinchak*, 392 F.3d 551, 558 (3d Cir. 2004).

283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Thus, the court cannot review the merits of claim three absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Grosvenor has not alleged, and the court cannot discern, any cause for his procedural default of claim one. In the absence of cause, the court will not address the issue of prejudice. Moreover, the court concludes that Grosvenor's procedural default should not be excused under the "miscarriage of justice" exception to the procedural default doctrine, because Grosvenor has not alleged any facts to establish his actual innocence. Accordingly, the court will deny claim one as procedurally barred.

## B. Claim two: prosecutorial misconduct

In his second claim, Grosvenor contends that the prosecutor[5] coerced his co-defendant, Chris Gray, into changing his statement to implicate Grosvenor in the robbery. To support this allegation of coercion, Grosvenor refers to an affidavit signed by Gray in 2005 that was filed in Grosvenor's second Rule 61 proceeding, in which Gray asserts that the prosecutor coerced him to alter his statement in order to implicate Grosvenor as one of the robbers of the liquor store in 2002. According to Grosvenor, he would not have pled guilty but for Gray's statement and Gray's decision to plead guilty.

Grosvenor exhausted state remedies for this claim by presenting it to the Delaware Supreme Court when he appealed the Superior Court's denial of his second Rule 61 motion.

---

[5]Claim two also alleges that defense counsel coerced co-defendant Chris Gray. The court discusses this allegation as a separate claim later in the text of the opinion.

8

However, the Delaware Supreme Court did not consider this prosecutorial misconduct claim as an independent claim, but rather, as an attempt on Grosvenor's part to provide "newly discovered evidence" in support of his previously litigated ineffective assistance of counsel claims. Given these circumstances, the court will apply the pre-AEDPA standard and review claim two *de novo*.[6] *See Holloway v. Horn*, 355 F.3d 707, 718-19 (3d Cir. 2004).

Prosecutors "must refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). The United States Supreme Court has recognized that prosecutorial misconduct may occur in a variety of factual settings, and each factual setting may in turn have its own peculiar standard for finding prosecutorial misconduct and determining whether a constitutional violation occurred as a result of such misconduct. *See United States v. Williams*, 504 U.S. 36, 60 (1992)(Stevens, J. concurring)("like Hydra slain by Hercules, prosecutorial misconduct has many heads."); *see, e.g.*, *Mooney v. Holohan*, 294 U.S. 103 (1935)(knowing use of perjured testimony was misconduct). Generally, however, in order to prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's statements and/or actions were actually improper, and that such improper statements or actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See Darden v. Wainwright*, 477 U.S. 168, 180-81 (1986). In determining whether prosecutorial misconduct resulted in a denial of due process, "the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the

---

[6]*De novo* review means that the court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions." *Williams v. Taylor*, 529 U.S. 362, 400 (2000)(Justice O'Connor concurring).

defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001)(*citing Darden*, 477 U.S. at 182). The critical inquiry "is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

Gray's affidavit asserts that the prosecutor threatened to withdraw Gray's plea offer if Gray did not change his "story and implicate [his] codefendants." (D.I. 15.) The affidavit also asserts that the prosecutor told Gray he would have to serve a mandatory twenty-four year sentence if he were convicted at trial. Grosvenor presented Gray's affidavit in his second Rule 61 proceeding, and the Superior Court considered Grosvenor's claim to be a motion for new trial based on the newly discovered evidence of the affidavit. However, the Superior Court concluded that the affidavit was not legally sufficient to merit withdrawal of Grosvenor's plea. On post-conviction appeal, the Delaware Supreme Court determined that Gray's affidavit was "deficient in both form and substance," and therefore held that "the Superior Court was within its discretion to reject it as unreliable." *Grosvenor*, 2006 WL 1765846, at *1.

In this proceeding, the court accepts as correct the Delaware state courts' factual finding that Gray's affidavit was not reliable because Grosvenor has not provided clear and convincing evidence to the contrary.[7] Moreover, even if the prosecutor did inform Gray that a withdrawal of his plea offer would result in Gray serving a mandatory twenty-four year sentence, that statement does not rise to the level of prosecutorial misconduct because the prosecutor's sentence estimate

---

[7]The Delaware state courts viewed the affidavit as an attempt on Grosvenor's part to establish "newly discovered evidence" to support his previously litigated claim of ineffective assistance, rather than as support for a new and independent claim of prosecutorial misconduct. Nevertheless, given the fact that Gray's affidavit alleged that the prosecutor coerced him, and that Grosvenor is alleging the same issue here, the court concludes that it must defer to the Delaware Supreme Court's factual finding that Gray's affidavit was unreliable. *See Sumner v. Mata*, 449 U.S. 539, 555 (1981).

10

was accurate at the time of its assertion. The prosecutor based his twenty-four year calculation on the minimum mandatory penalties that would have been imposed if Gray had been convicted on all the charges in his indictment. Even though the Delaware Supreme Court subsequently held on co-defendant Poteat's direct appeal that the aggravated menacing charges merged into the robbery charges, which may have reduced Gray's sentence to fifteen years,[8] the prosecutor could not have foreseen this result at the time he made his twenty-four year calculation to Gray.

And finally, Grosvenor testified under oath that he voluntarily entered into the plea agreement and, at the trial of his co-defendants, that he committed the robbery. Under well-settled Supreme Court precedent, Grosvenor is bound by those statements absent clear and convincing evidence to the contrary. *See Blackledge v. Allison*, 431 U.S. 63, 73-73 (1977). Given that Gray's affidavit is unreliable, the allegations contained therein do not rebut the presumption of verity that has attached to the statements Grosvenor made admitting his guilt while under oath in open court. Accordingly, the court will deny claim two as meritless.

## C. Claim three: ineffective assistance of counsel

In his third claim, Grosvenor alleges numerous instances of counsel's ineffective assistance. Grosvenor presented these allegations to the Delaware state courts in his first and second post-conviction appeals, and the state courts denied the claims as meritless. Therefore, the court must review the Delaware Supreme Court's decisions under § 2254(d)(1) to determine if they are contrary to, or an unreasonable application of, clearly established Federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S.

---

[8](D.I. 12, at p.7.)

11

668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. In the context of a guilty plea, a petitioner satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Here, the Superior Court identified *Strickland* as the proper standard and analyzed Grosvenor's allegations regarding counsel's performance within its framework. Therefore, the Delaware Supreme Court's decisions affirming the Superior Court's two Rule 61 judgments are not contrary to *Strickland*. *Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

12

The court's inquiry is not over, however, because it must also determine whether the Delaware Supreme Court reasonably applied *Strickland* in denying Grosvenor's ineffective assistance of counsel arguments. The court will address each argument *in seriatim*.

### 1. Counsel's conflict of interest and coercion of Chris Gray

In his first two allegations of ineffective assistance, Grosvenor contends that counsel had a conflict of interest and coerced co-defendant Gray to plead guilty which, in turn, forced Grosvenor to plead guilty. More specifically, Grosvenor asserts that his counsel and the attorneys representing his co-defendants threatened all four co-defendants during a joint meeting in an attempt to get all of them to plead guilty.

According to Third Circuit precedent, a petitioner establishes a conflict of interest by proving "(1) multiple representation that (2) created an actual conflict of interest that (3) adversely affected the lawyer's performance." *Sullivan v. Cuyler*, 723 F.2d 1077, 1084 (3d Cir. 1983). Here, defense counsel did not represent any of Grosvenor's co-defendants, nor did counsel actively represent conflicting interests. *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1983). Rather, as explained by defense counsel in his affidavit, having all four co-defendants accept a plea offer was in Grosvenor's best interest; otherwise, his co-defendants might have testified against him, and he could have faced a substantially longer sentence. For instance, defense counsel explains that

> As to the allegation that I and three other lawyers coerced Mr. Grosvenor's co-defendant, Chris Gray, to sign a plea agreement and to testify against all co-defendant is inaccurate. It is accurate to say that all four defendant s were permitted to meet with their counsel in a meeting in cell block prior to the final case review. At that meeting, all lawyers expressed their views concerning the merits of the defense. The reason for the meeting was the fear that each of the co-defendants did not want to accept what was a rather generous plea extended to them for fear that they would be labeled a snitch. It was our

13

> hope, that if they all accepted the reasonable plea offer, none would be forced to testify against the other. In the end, Grosvenor and Gray accepted the State's plea offer while two co-defendants elected to go to trial, where they were found guilty of all charges and sentenced to prison terms far in excess of those being served by Gray and Grosvenor.

(D.I. 17, Rule 61 Affidavit in App. to State's Ans. Br. in *Grosvenor v. State*, No.141,2004)

Moreover, as explained by the State during Grosvenor's first Rule 61 proceeding, Gray initially accepted the plea offer as a result of this meeting, but then failed to "live up" to his end of the bargain. The prosecution moved to withdraw the plea offer, and Gray eventually accepted a new plea offer resulting in a sentence of eight years at Level V, followed by decreasing levels of probation. (D.I. 17.) The other two co-defendants were tried by a jury and received sentences of twenty-four years at Level V. Grosvenor, however, received the lightest sentence (seven years at Level V imprisonment) out of all four co-defendants.

Based on the foregoing, the court concludes that Grosvenor has failed to demonstrate how the meeting of counsel and co-defendants resulted in prejudice to him or how counsel's decision to conduct the meeting was professionally unreasonable.

### 2. Counsel failed to consult with him and reveal that the scientific evidence was exculpatory

According to Grosvenor, counsel provided ineffective assistance by failing to inform him that the prosecution did not have forensic evidence implicating him in the robbery before defense counsel advised him to plead guilty. The court rejects this argument. Although Grosvenor asserts that the lack of forensic tying him to the crime could have proved his total innocence or could have been useful for impeachment purposes, the case against Grosvenor was substantial even without direct forensic evidence. For instance, the four men were arrested within minutes of the robbery, fleeing from police, and the police report contained substantial evidence

14

implicating Grosvenor. Gray's testimony during Poteat and Williams' trials implicated

Grosvenor in the robbery. Additionally, despite Grosvenor's contention to the contrary, the lack

of definitive test results was not exculpatory because there were no results implicating anyone

else or eliminating Grosvenor as a suspect. And finally, Grosvenor stated during his plea

colloquy that he was entering the plea agreement because he was guilty, and he has not provided

any clear and convincing evidence to rebut the presumption of verity that has attached to that

statement. Accordingly, the court concludes that the Delaware Supreme Court did not

unreasonably apply *Strickland* and *Hill* in holding that Grosvenor was not prejudiced even if

counsel did not inform him about the lack of forensic evidence. *Grosvenor*, 2004 WL 2743543,

at *2.

### 3. Counsel did not move to merge the aggravated menacing charges with the robbery charges

In his next argument, Grosvenor asserts that counsel should have moved to dismiss the

aggravated menacing charges. Grosvenor, however, has failed to establish prejudice caused by

counsel's "failure" to move to dismiss or merge the aggravated menacing charges. To begin,

although the Delaware Supreme Court's decision in co-defendant Poteat's appeal suggests that

such a motion might have successfully reduced the mandatory minimum sentence from twenty-

four to fifteen years,[9] the State *nolle prossed* the aggravated menacing charges as part of

Grosvenor's plea agreement. Consequently, the *Poteat* decision did not impact Grosvenor's

sentence because it did not include a sentence for aggravated menacing.

Grosvenor, of course, may be asserting that he would have risked trial rather than have

---

[9]*See Poteat v. State*, 840 A.2d at 606 (holding that aggravated menacing merged with first degree robbery, based on display of what appeared to be a deadly weapon).

pled guilty, if the aggravated menacing charges had been dismissed prior to his guilty plea, because he would then have faced a reduced mandatory minimum penalty of fifteen years imprisonment on the remaining charges. Nevertheless, Grosvenor still received the substantial benefit of pleading guilty because he was only sentenced to seven years imprisonment and eight years of supervised probation, as opposed to a mandatory minimum sentence of fifteen years. *See Grosvenor*, 2006 WL 1765846, at *1; (D.I. 12, at p.11.) Thus, the court concurs with the Delaware state court's conclusion that there was "no reasonable probability that an earlier dismissal of the [aggravated menacing] charges would have changed Grosvenor's decision to plead guilty in light of the maximum possible sentence that Grosvenor could have received on the remaining charges."[10] *Grosvenor*, 2004 WL 2743543, at *1. Accordingly, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* and *Hill* in denying this claim.

### 4. Counsel failed to sever Grosvenor's trial

In his final complaint about counsel's performance, Grosvenor argues that counsel erred in failing to sever Grosvenor's trial from that of his co-defendants. However, given that all the evidence against the four co-defendants was substantially similar, counsel had no reason to believe that a motion to sever was likely to succeed. *See Robertson v. State*, 630 A.2d 1084, 1093-94 (Del. 1993). Moreover, Grosvenor has not demonstrated any prejudice resulting from the failure to sever, especially since Gray's testimony would have been admissible in a joint or a separate trial. *See Nelson v. O'Neil*, 402 U.S. 622 (1971). And finally, Grosvenor has failed to

---

[10]According to the State, Grosvenor was facing more than 200 years of possible incarceration if convicted on all charges. (D.I. 12, at p.7.)

16

articulate why he would not have pled guilty if his attorney had filed a severance motion. Thus, the court concludes that the Delaware Supreme court reasonably applied *Strickland* and *Hill* in denying this claim.

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2008). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

The court concludes that Grosvenro's petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, Grosvenor's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.

17

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JAMAH K. GROSVENOR, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. A. No. 06-619-GMS |
| | ) |
| PERRY PHELPS, Warden, and | ) |
| ATTORNEY GENERAL OF THE | ) |
| STATE OF DELAWARE, | ) |
| | ) |
| Respondents. | ) |

**ORDER**

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY

ORDERED that:

1. Petitioner Jamah K. Grosvenor's petition for the writ of habeas corpus filed pursuant to
28 U.S.C § 2254 is **DISMISSED**, and the relief requested therein is **DENIED**.  (D.I. 1.)

2. The court declines to issue a certificate of appealability due to Grosvenor's failure to

satisfy the standards set forth in 28 U.S.C. § 2253(c)(2).

Dated:  Feb 26    , 2010                    CHIEF UNITED STATES DISTRICT JUDGE